**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JOSE MUNIZ, Individually,<br><br>Plaintiff,<br>v.<br><br>STOBER, STOBER ANTRIEBSTECHNICK GmbH + Co. KG, BREYER GmbH MASCHINENFABRIK, KLUBER LUBRICATION NA LP; ABC, Inc. (I-V); And JOHN DOES (I-V), being fictitious, jointly, individually and in the alternative,<br><br>Defendants. | Civil Action No. 5:18-cv-04619 - JLS |

# DEFENDANT BREYER GMBH MASCHINENFABRIK'S REPLY BRIEF IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

WILSON ELSER MOSKOWITZ
EDELMAN & DICKER LLP

Two Commerce Square
2001 Market Street, Suite 3100
Philadelphia, PA 19103
Tel.: (215) 627-6900
Fax: (215) 627-2665

150 East 42nd Street
New York, NY 10017
Tel.: (212) 490-3000
Fax: (212) 490-3038

# TABLE OF CONTENTS


| | | Page |
|---|---|---|
| I. | PRELIMINARY STATEMENT | 1 |
| II. | ARGUMENT | 2 |
| | A. Plaintiff Has Not Proffered Genuine Facts | 2 |
| | B. Plaintiff Misinterprets Basic Concepts to Distract from the Machine's Misuse | 3 |
| | C. Plaintiff Misconstrues the Operating and Safety Instructions to Obscure the Plain Facts Regarding Intended Use | 4 |
| | D. Plaintiff Cannot Ignore Evidence His Injury Resulted from Palram's Improper Modifications to the Machine | 6 |
| | E. Plaintiff Resorts to Speculation Regarding the E-stop Button to Confuse Issues of Causation | 8 |
| | F. Plaintiff's Reliance on *Tincher v. Omega Flex, Inc.* Is Misplaced | 8 |
| III. | CONCLUSION | 10 |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Azzarello v. Black Bros. Co., Inc.*,
391 A.2d 1020 (Pa. 1978)....9, 10

*Davis v. Berwind Corp.*,
640 A.2d 1289 (Pa. Super. 1994)....9, 10

*Dziedzic v. United Rentals, Inc.*,
2022 U.S. Dist. LEXIS 51347 (M.D. Pa. March 22, 2022)....11

*Ealy v. Bechtold*,
2021 U.S. Dist. LEXIS 42501 (M.D.Pa. Mar. 8, 2021)....2

*Fischer v. Walsh Parts & Service Co., Inc.*
296 F. Supp. 2d 551 (E.D. Pa. 2003)....9, 10, 11

*Roudabush v. Rondo, Inc.*,
2017 U.S. Dist. LEXIS 142832 (W.D.Pa. Sept. 5, 2017)....11

*Ruddy v. Polaris Indus.*,
2022 U.S. Dist. LEXIS 38142 (M.D. Pa. March 3, 2022)....10

*Tincher v. Omega Flex*,
104 A.3d 328 (Pa. 2014)....1, 9, 10, 11

*Williams v. West Chester*,
891 F.2d 458 (3d Cir. 1989)....2

*Zimmerman v. Alexander Andrew, Inc.*,
189 A.3d 447 (Pa. Super. Ct. 2018)....11

## I. PRELIMINARY STATEMENT

Plaintiff's Opposition Brief (the "Opp.") is remarkable not for its merits, but for the patchwork of strained interpretations and unfounded contentions offered in lieu of genuine evidence. The crux of Breyer's Motion for Summary Judgment (the "Motion")[1] is undisputed facts establish that at the time of Accident Palram had substantially modified the cross cutting Machine and employed it in an unintended use. Contrary to its design, intended function, and operating procedures, it was used to cut unsuitable material by multiple persons with integrated safety features disabled. *The Accident could not have occurred absent this improper use and modification*; particularly because removal of roller tables—previously wired into the Machine's E-stop safety circuitry—allowed Plaintiff to be drawn into the zone of danger and injured. Such unanticipated use and unforeseeable alterations represent an intervening cause of Plaintiff's injuries, breaking any causal link between his alleged harms and Breyer's alleged conduct.

Rather than address these facts, Plaintiff resorts to artful argumentation, violating his evidentiary burden (Part II(A)). He: (i) adopts a self-serving, restrictive definition of "operating" to argue only Luis Lopez worked at the Machine (Part II(B)); (ii) engages in strained documentary interpretation to avoid the Machine's established intended functions (Part II(C)); (iii) ignores facts regarding the integrated safety function of the roller tables (Part II(D)); (iv) relies on unfounded speculations regarding the E-Stop button to raise the appearance of a causation dispute (Part II(E)); and (v) wrongly claims *Tincher v. Omega Flex,* 104 A.3d 328 (Pa. 2014) overturned settled principles absolving manufacturers of liability for reckless misuse and unforeseen modifications (Part II(F)).

---

[1] Capitalized terms used herein have the meaning ascribed to them in the Motion.

## II. ARGUMENT

### A. Plaintiff Has Not Proffered Genuine Facts

The fatal defect of the Opposition, underlying each of Plaintiff's arguments, is a basic failure to adhere to his evidentiary burden. A plaintiff faced with a summary judgment motion must come forward with actual proofs, and cannot prevent dismissal by "relying on unsupported assertions, conclusory allegations, or mere suspicions." *Ealy v. Bechtold*, 2021 U.S. Dist. LEXIS 42501, * 26 (M.D.Pa. Mar. 8, 2021) (citing *Williams v. West Chester*, 891 F.2d 458 (3d Cir. 1989)). Yet throughout the Opposition's arguments, and in its responses to Breyer's proffered facts, Plaintiff merely relies on offering opinions, mischaracterizations, and unfounded speculations as though they were the equivalent of probative evidence. They are not. While a point-by-point refutation is beyond the scope of a brief reply, Breyer examines the most fundamental failures below, and otherwise alerts the Court to Plaintiff's general, disingenuous tactics in responding to Breyer's proffered facts. For example, Plaintiff frequently relies on conclusory statements of dispute, without citations or actual evidence, evades the fact under discussion by raising irrelevant factual contentions, and/or issues *pro forma* objections.[2] Otherwise, Plaintiff relies on baseless objections to Breyer's factual organization and submissions.[3] The Court should not countenance these tactics.

---

[2] *See, e.g.*, Resp. to BSMF ¶ 8 (claiming without citation that Breyer sells the cross cutting machine "without tables" rendering their removal foreseeable; even though the Machine was a unique custom product); Resp. to BSMF ¶ 9 ("disputing" the clear language of a document with nothing more than opinion); Resp. to BSMF ¶¶ 16-18 (formalistically disputing his own admissions regarding awareness of instructions and warnings but conceding their substance); Resp. to BSMF ¶ 28 ("disputing" facts regarding the roller tables' physical integration into the E-stop circuitry with irrelevant claims regarding allegedly inadequate instructions and warnings).

[3] Plaintiff claims Breyer's facts should be disregarded because they are "disorganized" (Resp. to BSMF at p. 3), ignoring that they are clearly organized thematically and chronologically beginning with the Machine's design and attendant documentation, and ending

**B. Plaintiff Misinterprets Basic Concepts to Distract from the Machine's Misuse**

Undisputed facts establish (i) the Machine was custom-made, built to specifications provided to Breyer by its customer (JSMF, ¶ 7); (ii) specifically designed to cut sheets of multiwall plastic (JSMF ¶ 14, 16; *see also* BSMF ¶¶ 2-3); and (iii) designed for operation by a single person from the control panel (JSMF ¶14, 17; *see also* BSMF ¶ 4). These intended uses and operations were simply not followed the day of the Accident when multiple persons were using the machine to cut rolls of plastic (JSMF ¶¶ 23-26), despite being well-documented.[4] Unable to refute plain facts, Plaintiff resorts to creative misinterpretation and ignoring unfavorable evidence. Plaintiff claims only one person, Luis Lopez, operated the machine. (Opp., p. 5). He also conclusorily asserts his lack of training with the Machine was irrelevant because he was not "operating" it. (*Id.*), and further claims there is "no suggestion" in the record that the Machine was cutting plastic rolls. (Opp., p. 11). This argumentation requires "tortured" interpretations and incredible evasions, to borrow counsel's words. (Opp., p. 11).

*First*, it is undisputed more than one person was using the Machine: in addition to Lopez, Plaintiff and two other temporary employees—Daymar Furse and Ratang Oong—were stationed at various points to assist in its operation. (JSMF ¶¶ 23-25). Plaintiff attempts evasion by narrowly defining the concept of "operating" the machine to include only Lopez' work at the

with the Accident and the Machine modifications that caused it. Otherwise, Plaintiff asserts the facts were improperly submitted (Resp. to BSMF at p. 2), a harmless error for which Breyer apologies to the Court, but one that caused Plaintiff no prejudice in formulating his response and which should be forgiven given the federal judicial preference of resolving disputes on their merits, rather than procedural issues.

4 "*[T]he cross cutting device is intended and suitable for the transverse cutting of thermoplastic double wall sheets;*" "*any additional use will be considered inappropriate and at the user's own risk;*" and "*this stand-alone cross cutting equipment must only be operated by one man.*" (JSMF ¶¶ 14, 16) (citing Exhibit H, § 1.2); (*see also* Exhibit H §§ 4.2 and 5, additional instructions specifying a single operator and cutting only double wall sheets).

controls, hoping to exclude Furse's, Oong's, and Plaintiff's presence from the Court's attention. This self-serving interpretation defies both the facts and common sense: other persons were clearly working at the Machine. *Second*, scrutinizing this definition reveals Plaintiff's corollary argument regarding training is specious. Plaintiff was clearly working with the Machine at his employer's behest, within reach of equipment he recognized as dangerous, but he had never been trained in its functions. (*See* Exhibit K, pp. 44-49, 63-66) (Plaintiff testifying to his role the day of the Accident, his recognition of the danger, and his lack of familiarity with the operating instructions). *Third*, there is no credible dispute the operators were cutting plastic from rolls. Counsel's declaration there is "no suggestion" of this fact lacks any citation, and his characterization of the record is not proof. It also ignores unequivocal evidence. (*See* Exhibit E, p. 3, Lopez statement describing having been tasked with "trying something new with rolls of plastic"). Depositions and witness statements evidence that while Lopez was at the control panel, Furse and Oong spun plastic rolls, feeding plastic through the clamping/cutting apparatuses where Plaintiff would grab it and pull it across to rest on top of a pallet stack (JSMF ¶¶ 24-26) (citing Furse and Plaintiff deposition testimony and Lopez witness statement). Plaintiff himself stated the plastic, *which had been unspooled from a coiled roll*, began to retract and pull him toward the clamping bar, trapping his arm. (JSMF ¶¶ 24-25, 29; BSMF ¶ 26); (*see particularly* Exhibit K, pp. 110-112 (Plaintiff testimony that the "roller" of plastic "pull[ed] back").

Thus, the evidence clearly shows that had only a single person been operating the Machine from the control panel, as Breyer intended and instructed, the Accident could not have happened. Had the Machine's functions and instructions been respected, there simply would not have been anyone in Plaintiff's position, at risk of being drawn toward the danger zone.

### C. Plaintiff Misconstrues the Operating and Safety Instructions to Obscure the Plain Facts Regarding Intended Use

As amply evidenced in the record, Breyer designed the Machine to cut sheets of

multiwall plastic per specifications provided by Paltough/Suntuf for a stand-alone device that could be used off-line for cutting smaller plastic pieces that could not be done during the in-line process. (Exhibit C, pp. 83-84). This was clearly reflected in the Operating Instructions. (JSMF ¶14, 16, citing Exhibit H, Sections 1-2 and 4.2). Had the Machine been used to cut flat separate sheets as intended, rather than plastic pulled taut from a coiled roll, the Accident would not have happened as the material would not have retracted back toward the roll, pulling Plaintiff with it.

Again unable to contend with a fact directly, Plaintiff resorts to more strained mischaracterizations of facts and documents to create an appearance of a dispute. He asserts (i) there was no instruction or warning sheets of plastic coming off rolls could not be cut with the Machine; (ii) the instructions were inadequate because they concerned a "completely different" Machine; (iii) the Machine was being used to cut long, thin sheets of plastic into shorter sheets, its exact intended use; and (iv) the distinction between rolls and sheets is not material. (Opp., pp. 11-12). None of these assertions bear scrutiny.

*First*, Plaintiff's claims regarding the instructions are specious. Breyer designed the Machine for a particular purpose, to cut sheets of multiwall plastic, and the Operating Instructions both clearly reflected that purpose *and expressly disclaimed any other use*. (*See* Exhibit H, § 1-2). Plaintiff's view regarding the instructions' adequacy would unreasonably require a manufacturer to articulate every single potential improper use instead of clearly communicating intended use and warning against unintended uses. Next, his characterization of the Operating Instructions and Safety Instructions as having "nothing to do with the machine at issue" is baseless. (Opp., p. 12). While he claims they concerned an "extrusion" machine (*id.*), review of the Operating Instructions show they (i) are for the subject "cross cutting device and pick up table"; (ii) describe the cross cutting functions and operations; and (iii) contain detailed photographs and diagrams of the exact Machine and its components (*see generally* Exhibit H). Furthermore, the Safety Instructions also state they (i) apply to the "cross cutting device with

pick up tables" (Exhibit I, p. ii); (ii) incorporate the "operating instructions" for the cross cutting device (*id.*, Section 1.1); and (iii) contain basic safety principles and regulations applicable to its use (*see id.*, Sections 1 and 3).

*Second*, Plaintiff's contentions regarding intended use and the distinction between rolls and sheets are likewise unfounded. Plaintiff's self-serving beliefs cannot contradict clear facts in the record. As set forth above, Breyer specifically designed the Machine to cut sheets of multiwall plastic, not to cut multiwall plastic *of any source* into sheets as Plaintiff suggests. (JSMF ¶14, 17). It was not designed to cut plastic from rolls or coils, which Plaintiff ignores. (*See* Exhibit C, pp. 84-85; 120-121). Moreover, Plaintiff's claim that there is no "material" distinction between sheets and rolls cites to nothing in the record, reflects mere conclusory opinion, and is expressly contradicted by actual facts. (*See* Exhibit C, pp. 121 and 124) (testimony that there is a difference between sheets and rolls from a safety standpoint, and rolled plastic is "very rigid and stiff" and "cannot be operated by this type of machine").

### D. Plaintiff Cannot Ignore Evidence His Injury Resulted from Palram's Improper Modifications to the Machine

The record shows that Palram substantially modified the Machine, bypassing key safety features by removing the roller tables and re-wiring its circuitry to operate it without them. This resulted in the Accident, as the table's presence would have physically blocked Plaintiff from the zone of danger. Again unable to refute a plain fact, Plaintiff purports to dispute the roller tables' purpose as an integral safety feature, claiming (i) they were not essential for the blade to function, were easily removable with a screwdriver, and not guard locked; and (ii) their safety function was not specifically identified in the documentation or on the product itself. (Opp., pp. 9-10; Resp. to BSMF ¶¶ 27-38). His contentions again rest entirely on mischaracterization and ignoring evidence.

Contrary to Plaintiff's opinion, removing the tables was not as simple as unscrewing the

mountings. Plaintiff cannot dispute that the tables contained E-stop buttons which were wired into the Machine's circuitry, which required Palram to disconnect them from the E-stop circuit and bypass them. Otherwise, removal of the tables would break the circuit and prevent operation of the Machine. Testimony cited by Plaintiff inadvertently concedes this. (*See* Resp. to BSMF ¶ 33) (noting to remove the tables one had to "jumper out the missing e-stop correctly"). Otherwise, Plaintiff's response, for all its sound and fury, is tellingly silent in actually addressing the E-stop circuitry and the bypass installation Palram representatives admitted occurred. (*See, e.g.*, Resp. to BSMF ¶¶ 7 and 28) (purporting to "dispute" that removing the tables required unplugging the E-stop, but containing no factual matter addressing the circuitry and bypass); (*compare with* Exhibit O, pp. 74-77) (testimony by Palram representative admitting the control panel and circuit were rewired and bypassed to make the E-stop "think it was closed"). Even his expert Gary Hutter elides mention of the E-stop circuitry and the bypass required to circumvent it. (*See* Opp., Exhibit 1, p. 4) (offering *ipse dixit* opinion the tables were not essential to function, citing no source, and ignoring the E-stop circuitry and bypass). Moreover, Plaintiff's cavils over the instructions are pedantic and ignore substance: (i) the Safety Instruction clearly states the Machine should only be operated with its safety equipment "[i]n perfect condition," properly mounted, and in working order (*see* Exhibit I, Sections 1.4, 2, 2.1, 3.3, and 3.7), and (ii) figures in the Operating Instructions visually depicted the roller tables as one of the Machine's safety features (*see* Exhibit H, Figure 1-1) (diagram depicting "safety devices" and including roller table in the illustration). The documentation also warned against *any* modifications undertaken without Breyer's knowledge or approval. (Exhibit I, Section 3.12).

Thus, Plaintiff's selective characterization of the facts and *pro forma* disputes notwithstanding, the roller tables were a clearly designated safety feature that could not be easily removed without rewiring circuitry and controls. Consequently, Breyer did not know or foresee that Palram would remove the tables and then deliberately and extensively rewire the system to

bypass their safety function. (Exhibit C, pp. 104-105; 124-125). Plaintiff's claims to the contrary, resting on misconstruing the efforts needed to remove the tables and the contents of the instructional documentation, are again unfounded opinion.

**E. Plaintiff Resorts to Speculation Regarding the E-stop Button to Confuse Issues of Causation**

To muddy an otherwise clear record, Plaintiff speculates the primary and proximate cause of Plaintiff's injury was the defective E-stop button. (Opp., pp. 5-6). In support, Plaintiff cites to the opinion of his liability expert that "the emergency stop control violated the safety criteria." (Opp., Exhibit 1). Hutter opines that the emergency stop button contained a "recessed ring configuration" in violation of safety standards, making it difficult for Lopez to reach and hit the red button. Hutter contends a proper configuration would have enabled Lopez to easily hit the red button and stop the Machine. This opinion is unfounded speculation. According to Luis Lopez, and conceded by Plaintiff, he in fact *did* "hit the red emergency button" and it "stayed in" and he "kept pushing on the button about five or six times." (Exhibit E, p. 5; Opp., Resp. to BSMF ¶ 31). Therefore, the presence of a "recessed ring configuration" had nothing to do with the failure of the machine to stop, and Hutter's other contentions regarding alleged defects of the E-stop are unfounded, particularly given Plaintiff's expert does not account for Palram's modification to the E-stop circuitry. To again borrow counsel's words, the E-stop is a "red herring" (Resp. to BSMF ¶ 3) to distract from the clear misuse and modification of the Machine.

**F. Plaintiff's Reliance on *Tincher v. Omega Flex, Inc.* Is Misplaced**

Finally, Plaintiff compounds his misstatements of fact with misstatements of law. Contrary to Plaintiff's claims (*see* Opp., pp. 15-20), *Tincher v. Omega Flex*, 104 A.3d 328 (Pa. 2014) did not overturn Pennsylvania case law relieving a manufacturer from the liability where either reckless misuse or substantial, unforeseeable modifications to a product represent a superseding cause of the injury. Plaintiff particularly relies on *Tincher* to claim *Davis v. Berwind*

*Corp.*, 640 A.2d 1289 (Pa. Super. 1994) and *Fischer v. Walsh Parts & Service Co., Inc.* 296 F. Supp. 2d 551 (E.D. Pa. 2003) are no longer precedential or good law, asserting those cases rested on *Azzarello v. Black Bros. Co., Inc.*, 391 A.2d 1020 (Pa. 1978) which *Tincher* overruled. (Opp., pp. 16-18). However, *Tincher* did not effectuate the sea-change the Opposition suggests.

In *Tincher*, the Pennsylvania Supreme Court adopted a new standard of proof to determine whether a product is in a defective condition in strict liability cases. 104 A.3d at 406-427. In overruling *Azzarello*, which had removed from the jury the determination of whether a product was "unreasonably dangerous," the *Tincher* court held whether a product is in a defective condition is a question for the fact finder and is only removed from a jury's consideration where it is clear that reasonable minds could not differ on the issue. *Id.* at 428. However, *Tincher* did *not* overrule case law and principles establishing when manufacturers could establish a defense to liability as a matter of law based on misuse or modification of a product, expressly stating that it left untouched "subsidiary issues"—such as manufacturer defenses and the "proper application of the intended use doctrine"—that were "outside the scope of facts of this dispute" and had "not been briefed" by the parties. *Id.* at 431-432.

Consequently, pre-*Tincher* cases concerning defenses available as a matter of law remain good law and instructive precedent. *Davis* and *Fisher* also survive as their holdings were not dependent on the branch of *Azzarello* that *Tincher* overturned.[5] Indeed, the ongoing viability of *Davis* is demonstrated by recent decisions citing its holdings in addressing identical issues as this

---

5 *Davis* did not rely solely on *Azzarello* for its holding that a manufacturer is not liable for injuries flowing from a defect created by a substantial alteration amounting to an intervening cause. *Davis*, 640 A.2d at 1297. The *Davis* opinion rested on extensive citations to Pennsylvania state and federal cases, and instructive opinions from other jurisdictions. *Davis*, 640 A.2d at 1297-1299. Similarly, *Fisher* did not rely on *Azzarello* at all, and based its holdings on extensive citations to Pennsylvania state and federal cases. *Fisher*, 296 F. Supp. 2d at 563-564.

case. *See Ruddy v. Polaris Indus.*, 2022 U.S. Dist. LEXIS 38142 (M.D. Pa. March 3, 2022) and *Dziedzic v. United Rentals, Inc.*, 2022 U.S. Dist. LEXIS 51347 (M.D. Pa. March 22, 2022). Moreover, Pennsylvania state and federal case law post-*Tincher* demonstrates the ongoing viability of defenses based on unforeseeable misuse or modification. *See Zimmerman v. Alexander Andrew, Inc.*, 189 A.3d 447 (Pa. Super. Ct. 2018) (considering whether defendant had established defense as a matter of law based on misuse of the product, and finding, unlike this case, that plaintiff had tendered sufficient evidence he was engaged in a foreseeable application); *Roudabush v. Rondo, Inc.*, 2017 U.S. Dist. LEXIS 142832 (W.D.Pa. Sept. 5, 2017) (case previously cited by Breyer, removal of integral safety devices is not foreseeable to a manufacturer especially where the product is modified to operate without them).

## III. CONCLUSION

For the reasons set forth herein and in the Motion, Breyer respectfully requests that this Court grant Summary Judgment in its favor.

Respectfully submitted,

WILSON ELSER MOSKOWITZ
EDELMAN & DICKER LLP

By: */s/ Michael S. Takacs*
Michael S. Takacs, Esquire
Philadelphia, PA 19103
Attorney for Defendant
Breyer GmbH Maschinenfabrik

**CERTIFICATE OF SERVICE**

I, Michael Takacs, attorney for the defendant, Breyer GmbH Maschinenfabrik, hereby certify that on the 12th day of May, 2022, a true copy of the foregoing Defendant Breyer's Reply Brief in Further Support of Its Motion for Summary Judgment was filed through the ECF system and sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be served via first-class mail, postage prepaid, upon anyone indicated as a non-registered participant.

Michael S Takacs

Michael S. Takacs, Esquire